# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Gary Mullins, Jr., | Civ. No. 23-1855 (JWB/DTS) |
| Plaintiff, | |
| v. | **ORDER ACCEPTING AS MODIFIED REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Dr. Morgan, *Chief Medical Doctor*; United States of America; Karin Kay Parsons, *P.A.*; and Rachel Wolfe, *R.N.*, | |
| Defendants. | |

Gary Mullins, Jr., pro se Plaintiff.

Trevor Brown, Esq., DOJ-USAO, counsel for Defendants.

United States Magistrate Judge David T. Schultz issued a Report and Recommendation ("R&R") on July 17, 2024. (Doc. No. 52.) The government timely objects to the R&R. (Doc. No. 62.) For the reasons below, the government's objection is overruled, and the R&R is accepted as modified.

## BACKGROUND

### I.     Factual Allegations

Plaintiff Gary Mullins, Jr. ("Mr. Mullins") is a federal prisoner. Medical staff at Federal Medical Center, Rochester ("FMC-Rochester") placed seven staples in Mr. Mullins's forehead to close a wound that had opened during a fall from his bunk. (Doc. No. 11 ¶ 12.) The number of staples used to close the wound was

contemporaneously documented in Mr. Mullins's medical file. (*Id.* ¶ 16.)

When Mr. Mullins returned as advised to have the staples removed, Nurse Rachel Wolfe ("Nurse Wolfe") accidentally removed only five of the seven staples from Mr. Mullins's head. (*Id.* ¶¶ 17–20.) Even though Mr. Mullins insisted that Nurse Wolfe had failed to account for two staples, Nurse Wolfe did not investigate the matter further. (*Id.* ¶¶ 21–23.)

In the following months, as Mr. Mullins's wound continued to grow swollen and painful, he continued to plead that staples remained in his head and to have them removed. (*Id.* ¶¶ 24–25.) Approximately four months after Nurse Wolfe's mistake, imaging revealed the obvious for Mr. Mullins—two staples were still in his head. (*Id.* ¶¶ 26–27.) While Dr. Mark Morgan ("Dr. Morgan") and Physician's Assistant Karin Parsons ("PA Parsons") managed to remove one staple, the other had migrated too close to Mr. Mullins's eye to be removed without surgery. (*Id.* ¶¶ 28–29.) Fifteen months would pass between Nurse Wolfe's mistake and the final staple being surgically removed at the Mayo Clinic. (*Id.* ¶¶ 29–30.)

During this time, Mr. Mullins claims he suffered headaches and experienced fear and anxiety that he would lose his vision. (*Id.* ¶ 33.) He also claims the delay in removing the sixth and seventh staples caused facial disfigurement, pain, irritation, emotional distress, and embarrassment. (*Id.* ¶¶ 34–36, 47.)

## II. Procedural History

On June 20, 2023, Mr. Mullins filed a Complaint that asserts a claim for negligent treatment and care against the United States under the Federal Tort Claims Act

2

("FTCA"). (Doc. Nos. 1, 11.) The government moved to dismiss or for summary judgment near the start of the action, arguing Mr. Mullins was required by Minn. Stat. § 145.682 to serve on them expert affidavits supporting the claim of medical negligence, and that his failure to do so necessitates mandatory dismissal with prejudice under the Minnesota statute.

The Magistrate Judge considered whether Minn. Stat. § 145.682 required an expert affidavit to establish five allegations, each claiming that Defendants breached their duty of care when failing to:

(1) verify the number of staples;

(2) consult Mr. Mullins's medical records to verify the number of staples;

(3) order imaging to locate the missing staples;

(4) timely intervene to prevent the need for surgery; and

(5) timely arrange and refer Plaintiff for surgery.

(Doc. No. 52 at 7.) Allegations (1) and (2) were found by the Magistrate Judge to fall within the knowledge of a layperson and thus did not require expert affidavits. (*Id.* at 7–8); Minn. Stat. § 145.682(1) (no affidavit needed where expert testimony unnecessary to establish prima facie case). As to allegations (3) through (5), Mr. Mullins was directed to serve affidavits by October 14, 2024. (*Id.* at 8) Failure to comply with Minn. Stat. § 145.682 would result in mandatory dismissal with prejudice of Mr. Mullins's FTCA claim. (*Id.*)

The government objects to the R&R's finding that Mr. Mullins need not serve expert affidavits as to allegations (1) and (2). (Doc. No. 62.)

## ANALYSIS

**I.    Standard of Review**

The portions of the R&R to which the government objects are reviewed de novo, and the R&R may be accepted, rejected, or modified, in whole or in part. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). Any aspect of an R&R to which no specific objection is made is reviewed for clear error. *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *see also* Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

**II.   Mr. Mullins's Negligent Treatment and Care Claim under the FTCA**

The FTCA creates federal liability for personal injuries caused by the negligent or wrongful acts or omissions of a government employee acting within the scope of his or her office or employment. 28 U.S.C. § 1346(b). Liability is limited to circumstances where the government, if it were a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *Id.* Thus, the FTCA enables a claimant to assert claims against the government as if it were the employer of a negligent federal employee, not as if it were itself the negligent employee. *Knowles v. United States,* 91 F.3d 1147, 1151–52 (8th Cir. 1996) (Beam, J., dissenting). Ascertaining liability also requires finding a private entity that is most reasonably analogous to the United States under like circumstances. *See Lozada v. United States*, 974 F.2d 986, 989 (8th Cir. 1992).

Here, Mr. Mullins's FTCA claim is based on allegations of inadequate medical

care provided at FMC-Rochester. (Doc. No. 11 ¶ 2.) Under the present circumstances, it is most reasonable to analogize FMC-Rochester to a private hospital. *Lozada*, 974 F.2d at 989; *see United States v. Smith*, 499 U.S. 160, 162 (1991). Hospitals may be held vicariously liable under Minnesota law for the negligent acts or omissions of their employees. *Plutshack v. Univ. of Minn. Hospitals*, 316 N.W.2d 1, 5–7 (Minn. 1982). Therefore, the government may be liable under the FTCA if *one* of its employees provided negligent treatment and care to Mr. Mullins. Additionally, Minnesota is a jurisdiction that applies joint and several liability to indivisible injuries, and it is difficult at this stage of the litigation (especially without argument from the parties on the issue) to conclusively determine that Mr. Mullins's injury is divisible. *See Canada by Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997).

The government contends that Mr. Mullins's case should be dismissed because he failed to comply with Minn. Stat. § 145.682, which applies to actions "alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is needed to establish a prima facie case." Minn. Stat. § 145.682. Failure to timely serve the two affidavits required by Minn. Stat. § 145.682 results in "mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case." *Id.* subd. 6(a)–(b). *Plutshack*, 316 N.W.2d at 5.

It is premature to conclude that Minn. Stat. § 145.682 applies to Mr. Mullins's FTCA claim. The R&R commits clear error by not fully considering that Mr. Mullins's claim, brought under the FTCA, effectively mirrors a claim against the employer of the

allegedly negligent medical staff. *See Knowles*, 91 F.3d at 1151–52. Consequently, whether Mr. Mullins could establish a prima facie case of negligent treatment and care against the government, potentially without needing to satisfy allegations (2) through (5), or by substantiating these allegations by means other than expert testimony, was not fully considered. *See Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163, 1165 (8th Cir. 1989) (directing courts to explore all possible means of establishing a prima facie case without expert testimony).

The statute here only becomes applicable when expert testimony is necessary to establish a prima facie case of negligent treatment and care. There are three elements of such a claim in Minnesota: (1) the standard of care recognized by the medical community as applicable to the defendant's conduct; (2) that the defendant in fact departed from that standard; and (3) that the defendant's departure from the standard was a direct cause of the injuries. *Plutshack*, 316 N.W.2d at 5.

Expert testimony must usually be offered with respect to the standard of care and departure from that standard. *Silver v. Redleaf*, 194 N.W.2d 271, 272 (Minn. 1972). But there are exceptional cases in which expert testimony is not necessary. *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 191 (Minn. 1990). Expert testimony is not required when the jury can rely on common knowledge to determine that the results of surgical or medical treatment were the product of negligence. *Miller v. Raaen*, 139 N.W.2d 877, 880–81 (Minn. 1966). Generally, these types of cases involve circumstances that could not have happened in the absence of negligence, such as where medical devices are left in the body after surgery. *Id.* (collecting cases); *Bellecourt v. United*

6

*States*, 784 F. Supp. 623, 637–38 (D. Minn. 1992). Conversely, expert testimony will typically be needed when a claim is prefaced on a failure to diagnose, for example, because laypersons are typically unable to diagnose disease. *Miller*, 139 N.W.2d at 880. Likewise, expert testimony is typically required for cases implicating the standards of practice in different schools of medicine, matters of science or specialized art, and with respect to matters resting on pure theory, judgment, and opinion. *Id.*

At this stage, Mr. Mullins may be able to establish a prima facie case of negligent treatment and care against the government without the need for expert testimony, and thus the expert affidavit requirement of Minn. Stat. § 145.682 does not currently bar his claim. To proceed, Mr. Mullins only needs to show that the medical staff employed by the government at FMC-Rochester departed from the standard of care recognized by the medical community when they failed to remove all seven staples from his head, and that the retained staples were a direct cause of his injury. These determinations lie within the common understanding of laypeople, as they reflect issues of negligence that are readily apparent. *See Chizmadia*, 873 F.2d at 1165 (noting that expert testimony may not be required where the injury is an obvious consequence of negligence); *cf. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12 (2002) ("It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits . . . .").

Alternatively, at this time, it is uncertain whether expert testimony is necessary to support allegations (3) and (4), which concern the government's failure to order imaging of Mr. Mullins's forehead and to intervene in a timely manner to prevent the need for

7

surgery. First, these actions may not be readily distinguishable from allegations (1) and (2) in terms of Mr. Mullins's overall injury. Second, while a layperson may not be familiar with the technical distinctions among various imaging methods—such as a CT scan, ultrasound, or x-ray—it is within common knowledge to recognize that modern medical technology can be used to detect foreign objects, such as a staple, within the body. This understanding supports the notion that the alleged failure to employ such technology could be seen as a product of negligence, even without specialized medical expertise.

While Minn. Stat. § 145.682 does not currently apply to Mr. Mullins's claims, this does not preclude its applicability as the case progresses, nor does it suggest that he may ultimately present his case at trial unencumbered by applicable evidentiary standards and requirements. As discovery proceeds and a more developed record emerges, it may become evident that certain aspects of Mr. Mullins's claims, such as the permanency and financial valuation of his injuries, will require expert testimony. Similarly, a fuller record may reveal that allegation (5**)** ("timely arrange and refer Plaintiff for surgery") necessitates expert insights to establish a prima facie case. Should it become apparent that expert testimony is essential to substantiate Mr. Mullins's claim of negligent treatment and care, the government may renew its demand for expert affidavits under Minn. Stat. § 145.682. *See Chizmadia v. Smiley's Point Clinic*, 965 F.2d 647, 648 (8th Cir. 1992) ("[D]espite the opportunity to do so, Chizmadia has not offered any evidence to establish the prima facia case required to survive pretrial dismissal [under Minn. Stat. § 145.682 for inability to demonstrate a prima facia case of negligent failure to diagnose].").

8

Because this matter does not currently require the statutorily mandated expert affidavits, the Order setting a new deadline for Mr. Mullins to supply expert affidavits is rendered moot.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Defendant United States of America's Objection to the Report and Recommendation (Doc. No. 62) is **OVERRULED**;

2. The Report and Recommendation (Doc. No. 52) is **ACCEPTED AS MODIFIED** as set forth above;

3. Defendant's Motion to Dismiss or for Summary Judgment (Doc. No. 25) is **DENIED**; and

4. The Order granting Plaintiff's Motion for Extension of Time (Doc. No. 51) is **STRICKEN AS MOOT**.

Date: October 11, 2024                              *s/ Jerry W. Blackwell*
                                                                         JERRY W. BLACKWELL
                                                                         United States District Judge